Brittingham and Hixon Lumber Company, Plaintiff in Error, v. Board of Education of School District No. 71, Carroll County, et al., Defendants in Error.

Gen. No. 8,925.

Opinion filed January 17, 1936. Rehearing denied April 6, 1936.

J. L. BREARTON, of Savanna, CHARLES H. GREEN, of Freeport, and HADLEY, WEAVER & WOODWARD, of Wheaton, for plaintiff in error; J. L. BREARTON, CHARLES H. GREEN and CHARLES W. HADLEY, of counsel.

SIMS & STRANSKY, of Chicago, for certain defendant in error; FRANKLIN J. STRANSKY and WELLINGTON G. BROWN, of Chicago, of counsel.

Mr. Justice Wolfe delivered the opinion of the court.

The Brittingham & Hixon Lumber Company filed a bill of complaint in the circuit court of Carroll county on June 4, 1930, making the defendants parties thereto. The bill alleges that the said lumber company on October 10, 1928, made a contract with one Harry Branch to furnish lumber and building supplies to be used in the construction of the schoolhouse to be built in the city of Savanna, Illinois. The bill further alleges that the materials were furnished as and when needed; that they were to be paid for at the current market price for such materials at the date the same were furnished to said Harry Branch; that the account was to bear 6 per cent interest on all monthly balances; that immediately after entering into the contract the complainant began and did furnish said Harry Branch lumber and building supplies and continued to furnish the same to said Harry Branch for the purpose of the erection of said schoolhouse up to and including the 6th day of January, 1930. Attached to the bill of complaint was a statement of the account between Harry Branch and the complainant in which they alleged there was due the complainant, after allowing all credits and set-offs, the sum of $4,574.69.

The bill further alleges that on the 7th day of December A. D. 1929, the complainant delivered to the secretary of the board of education a notice which sets forth that the Brittingham & Hixon Lumber Company had an account against Harry Branch, who was erecting said school building for the board of education under a contract between him and the school district, and that there was due $13,930.13 from said Harry Branch to said complainant; that said statement was being filed for the purpose of filing a lien against all funds which the board of education then

had in its possession, unexpended for use in paying the cost of the construction of the school building.

The bill further alleges that the said board of education did enter into a contract with Harry Branch to do the general construction work incident to the erection of the said school building and that he furnished to said board of education a bond to which the Detroit Fidelity and Surety Company is surety in the penal sum of $115,697.50.

The plaintiff further alleges that on the date of the filing of such written notice of its account and claim for a lien, there were ample funds due Harry Branch to pay the said account in full; that upon the filing of said notice, Harry Branch admitted that said account was true and correct; that after the filing of this account and claim for a lien the surety company did advise the board of education concerning the disposing of the money it had in its possession for the payment of the creditors of Branch; that the surety company had in its possession a list of the creditors of Branch and the amount due and owing to each, and notwithstanding the fact that this complainant had filed a claim for lien under the statute, the surety company did advise the board of education as to how to distribute the said money among the several creditors of Branch and that the board of education notwithstanding the claim for lien did not pay complainant in full but did pay complainant and all the other creditors of Branch 71 per cent of the account, exclusive of interest, but refused to pay the balance due to the complainant; that the board of education had under its control and in its possession sufficient funds to pay the claim of the complainant.

The prayer of the petition is that a full and complete accounting of all money which the board of education had in its possession on the 7th day of December A. D. 1929, he had and that said board of

education be required to disclose and set forth definitely the name or names of any person who may have filed with it a claim for lien, against the funds in its hands to be used for the payment for the construction of said building and the amount which was paid to Harry Branch under his contract; and that the court will direct and order either the said board of education or the surety company under its bond aforesaid to pay to the complainant all money rightfully due to it, and for general relief.

The defendant Detroit Fidelity & Surety Company filed its answer and admitted furnishing a bond for Harry Branch in the penal sum of $115,697.50. It admits that the surety company did offer the board of education a list of the creditors of Harry Branch and advised the board of education as to how to distribute the said money among his several creditors; that the said board of education, acting upon said advice, made distribution of the sum of $15,658.50 among said creditors of Harry Branch but did not pay the complainant's account in full; that the complainants accepted said pro rata distribution of its claim and is estopped from making any claim against this defendant or the board of education for the payment of the remainder of its claim. The answer denies that the court has jurisdiction in this proceeding to enter a judgment *in personam* against this defendant.

The board of education filed its answer. It neither admitted nor denied many of the allegations in the bill of complaint, but called for strict proof of the same. The answer does admit that the board of education entered into a contract with Harry Branch for the erection of a school building and that Harry Branch furnished a bond for the faithful performance of said work signed by the defendant, the Detroit Fidelity and Surety Company.

It further admits that the Detroit Fidelity and Surety Company did advise this defendant concern-

ing the disposition of the money it had in its possession for the payment of creditors of the said Harry Branch; that the surety company did then have in its possession a list of the creditors of the said Branch and the amount due and owing to each creditor and presented the same to this defendant, and advised it how to dispose of the money among the several creditors; that this defendant did not pay the complainant in full but paid it and all other creditors 71 per cent of its accounts, exclusive of the alleged interest due on monthly balances; that before the making of such pro rata distribution this defendant received notice in writing from or on behalf of the following named persons, and that there was due them from Harry Branch for materials employed in the construction of said school building the sum set opposite their respective names:

| | | | |
|---|---|---:|---:|
| Thos. Moulding, | 70% of | $ 1,041.00 | $ 728.70 |
| Richards Kelley Mfg. Co., | " " | 450.00 | 315.00 |
| A. J. Thompson Stone Co., | 71% " | 1,504.13 | 1,067.93 |
| Oley J. Dean | " " | 400.00 | 284.00 |
| Glenfire Steel Co., | " " | 327.05 | 232.20 |
| North Shore Terrazzo & Tile Co., | " " | 1,060.00 | 752.60 |
| Metz Mfg. Co., | " " | 699.00 | 496.29 |
| Lathrop Hodge Gypsum Co., | " " | 670.00 | 475.00 |
| Industrial Roofing Co., | " " | 1,148.00 | 815.08 |
| Hooker Glass & Paint Co., | " " | 813.00 | 577.23 |
| Brittingham & Hixon Lumber | " " | 13,380.63 | 9,500.24 |
| Beckley Card Co., | " " | 159.18 | 113.01 |
| Glen Larghran Hdw. Co., | " " | 69.68 | 49.47 |
| Wm. Myers | " " | 34.65 | 24.00 |
| N. W. Ill., Utility Co., | " " | 38.62 | 27.41 |
| Irwin Kennedy | " " | 12.00 | 8.52 |
| H. & S. Grocery | " " | 2.25 | 2.25 |
| E. Johns | " " | 35.00 | 24.85 |
| Savanna Const. Co., | " " | 164.83 | 117.03 |
| Ivey & Son | " " | 59.00 | 41.89 |
| Tripp Elec. Co., | " " | 6.06 | 4.50 |

That on the 7th day of December, 1929, it had in its possession the sum of $16,167.09, balance due Branch

under his contract; that it retained $508.59 to complete the building, and distributed $15,658.50 among the creditors above named, giving each 71 per cent of his or its claim; that Roy Howe was, at the time of the pro rata distribution, manager of the business of complainant and also a member of the board of education and that the complainant by reason of such payment is estopped to make claim against this defendant or the surety company for payment of the remainder of its claim. It denies that the court has jurisdiction to enter a judgment *in personam* against this defendant.

The case was referred to the master in chancery on December 30, 1930, to take proof and report to the court his conclusions of law and fact. On February 6, 1932, the court entered an order granting leave to the complainant to file an amended bill of complaint. The amendment was filed making some slight changes in the body of the bill. The prayer for relief was amended and asked ''that the complainant have a lien on the moneys or bonds or warrants or other evidences of indebtedness due on the 7th day of December 1929, or thereafter to become due to Harry Branch from the defendant, Board of Education, under its contract with Branch, as is in such case made and provided by statute, and that the defendant, Board of Education, be compelled to demand of the Surety Company that the Surety Company pay to the said board a sufficient sum of money to pay the claim of the complainant in full, with interest; and that the Surety Company be compelled to comply with such demand within a day certain to be fixed by the Court in this decree, and that thereafter the balance due under the demand of the complainant against Branch as of December 7, 1929, be paid in full.''

The case was again referred to the master in chancery who heard evidence and reported his findings of fact and conclusions of law. He recommended to the

court that there was no equity in the bill of complaint and the same should be dismissed. Objections were filed to the master's report, which were overruled. The objections were allowed to stand as exceptions in the circuit court and a hearing was had on the master's report and the exceptions thereto and the same were overruled. Judgment was entered in favor of the defendants and the bill dismissed for want of equity.

The case is brought to this court by the original complainants for review. It is contended by the defendants that the complainant is estopped to assert it has a lien on the money in the hands of the board of education for the payment of any bills that might be due from the board of education to Harry Branch because the lumber company had consented to an equal distribution of the funds in the hands of the board of education, to the creditors of Harry Branch as set forth in the defendant's answer; and the claim for lien, if any, had been waived by the complainant by the acceptance of its pro rata share of the funds in the hands of the board of education at the time the complainants filed their purported claim for a mechanic's lien.

The master found as follows: "(11)—That from the aforesaid moneys unpaid to the Defendant, Harry Branch, from said Defendant, Board of Education, said Board of Education deducted the sum of FIVE HUNDRED ($500.00) Dollars, to cover the expense of uncompleted items of the contract and equally prorated the sum of FIFTEEN THOUSAND SIX HUNDRED FIFTY-EIGHT 50/100 ($15,658.50) Dollars, among the Complainant and the remaining unpaid creditors as aforesaid of the Harry Branch, paying said Complainant on its claim the sum of NINE THOUSAND FIVE HUNDRED 24/100 ($9,500.24) Dollars.

"(19)—That no moneys, bonds or warrants belonging to said Harry Branch remain in the custody of Defendant, Board of Education.

"(20)—That no person to whom the moneys upon which the lien of Complainant may have attached has been paid, has been made a party to this proceeding.

"(21)—That at or before the distribution mentioned in Finding No. 11, one R. E. Morris, representing the Defendant, Detroit Fidelity and Surety Company, a corporation, stated to Roy Howe, manager, at Savanna, Illinois, for the Complainant, that all claims would be paid in full, and requested said Roy Howe, as such Manager, to consent to the distribution of the moneys in the hands of the Defendant, School Board, and by the application thereof to the payment in full of the smaller claims and to await for balance of claim of Complainant until final settlement of contract.

"(22)—That said Roy Howe, as such Manager, refused to consent to the payment in full of said smaller claims and insisted upon a pro rata distribution and payment among all claimants.

"(23)—That said pro rata distribution mentioned in Finding #11 was made under the direction of said R. E. Morris, representing said Defendant, Detroit Fidelity and Surety Company, with the full knowledge and approval of said Roy Howe, as such Manager, and pursuant to the demand made by him.

"(25)—That said Roy Howe in consenting to such distribution did waive all claim for lien against the specific moneys, warrants or bonds due the contractor, and the Complainant is now estopped from asserting such lien."

It is seriously insisted by the complainant that the finding of the master is contrary to the evidence in the case. From our examination of the abstract and the record, we are of the opinion that the master's conclusions of the facts are correct as set forth in the above findings, and that Roy Howe, who was manager of the complainant company, and also a member of the board of education, did consent to the distribution

of the funds as set forth in the master's findings and confirmed by the chancellor.

In the case of *Heidenbluth v. Rudolph,* 152 Ill. 316, the court said, "A contractor in order to maintain his mechanic's lien for work done and materials furnished must act in good faith towards all other persons interested in the property involved, and an act on his part which would make it unjust and inequitable to enforce his lien may operate as an estoppel to its enforcement in a court of equity."

In the case of *Springfield Marine Bank v. Marbold,* 264 Ill. App. 446, the question of estoppel was being discussed by the Appellate Court, and the following language was used: "Estoppel may arise from silence as well as from words. (*Oliver v. Ross,* 289 Ill. 624; *Lloyd v. Lee,* 45 Ill. 277; *Vail v. Northwestern Mut. Life Ins. Co.,* 192 Ill. 567.) One who has actively cooperated with others in a particular manner, will not thereafter be heard to assert an inconsistent right. (*Oliver v. Oliver,* 179 Ill. 9.) A creditor who has full knowledge of the making of an assignment for the benefit of all creditors and acquiesces therein, is bound by the assignment and cannot attack it."

It is our opinion that the complainant by its managing officer Roy Howe agreed with the board of education and the other creditors of Harry Branch to accept its pro rata share of the money which the board of education had on hand which was due to Harry Branch, the contractor, and by such act and acceptance it is estopped from claiming a lien against either of the defendants.

We have not decided the other assignments of error and cross error, as we deem it unnecessary in this case.

The court did not err in dismissing the bill for want of equity and the decree should be, and is hereby affirmed.

*Affirmed.*